**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WILMA ELEY,

                Plaintiff,

                v.

DISTRICT OF COLUMBIA,

                Defendant.

Civil Action No. 11-309  (BAH/JMF)

Judge Beryl A. Howell

**MEMORANDUM AND ORDER**

The plaintiff, Wilma Eley, seeks reimbursement for tuition costs she incurred to educate her disabled son, R.E., at a private school due to the alleged failure of the defendant, District of Columbia, to provide R.E. with free appropriate public education ("FAPE"), as required by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* The plaintiff also seeks to place R.E. at the private school in question, The Learning Community International at School Finders, on a permanent basis.

Pending before the Court are the Plaintiff's Motion for Summary Judgment, ECF No. 11, and the Defendant's Cross Motion for Summary Judgment, ECF No. 13. Magistrate Judge John Facciola issued a Report and Recommendation, recommending that the plaintiff's motion be granted in part and denied in part, and that the defendant's motion be denied. Magistrate Judge Facciola also recommended that the matter be remanded to the hearing officer to determine whether the reimbursement sought by the plaintiff is reasonable. The Report and Recommendation warned that failure to file a timely objection to it could waive the right to

appeal an order of the District Court adopting the recommendations. No objection to the Report and Recommendation has been filed, the time to file such an objection has lapsed, *see* Local Civil Rule 72.3(b), and thus all objections are deemed to be waived. *See Thomas v. Arn*, 474 U.S. 140, 149–51 (1985). Accordingly it is hereby

**ORDERED** that Magistrate Judge Facciola's Report and Recommendation, ECF No. 20, is adopted in full; and it is further

**ORDERED** that Plaintiff's Motion for Summary Judgment, ECF No. 11, is GRANTED in part and DENIED in part; and it is further

**ORDERED** that the Defendant's Cross Motion for Summary Judgment, ECF No. 13, is DENIED; and it is further

**ORDERED** that this matter is REMANDED to the hearing officer solely for the purpose of determining whether the $2,850 sought by the plaintiff as reimbursement is appropriate and reasonable.

## REPORT AND RECOMMENDATION

Currently pending and ready for resolution are Plaintiff's Motion for Summary Judgment ("Pl.'s Mem."), ECF No. 11, and Defendant's Opposition to Plaintiff's Motion for Summary Judgment, and the Defendant's Cross-Motion for Summary Judgment ("Def.'s Mem."), ECF No. 13. For the following reasons, I recommend that plaintiff's motion be granted in-part and denied in-part, that defendant's motion be denied, and that the matter be remanded to the hearing officer to determine whether the reimbursement sought is reasonable.

## BACKGROUND

### I.   FINDINGS OF FACTS

There is no genuine issue as to the following material facts:

1.      For the 2009–10 school year, plaintiff's child, R.E., attended the eighth grade at Community Academy Public Charter School ("CAPCS"), which is its own local education agency.  Administrative Record ("AR") at 6, 83, ECF No. 9.

2.      R.E. suffers from multiple disabilities, including a non-verbal learning disability, cerebral palsy, impaired motor skills, and an adjustment disorder.  *Id.* at 7; Pl.'s Statement of Material Facts Not in Dispute ("Pl.'s Statement of Facts") at 1, ECF No. 11-1.

3.      An Individualized Education Plan ("IEP") was developed on August 20, 2009 for R.E.  AR at 7.

4.      Present at this IEP development meeting were plaintiff, R.E.'s educational advocate, a related services provider, a psychologist, an occupational therapist, a special educator, a supervisor of special education, an additional related services provider, an adaptive physical education teacher, a special education coordinator, a special education specialist, and a compliance case manager.  *Id.* at 8.

5.      The August 2009 IEP provided for:  1) 26 hours per week of specialized instruction outside the general education setting; 2) 60 minutes per week of adapted physical education outside the general education setting; 3) 120 minutes per week of behavioral support services outside the general education setting; 4) speech language pathology for 90 minutes per week outside of the general education setting; 5) 27.5 hours per week of school health and school nursing outside the general education setting; 6) 30 minutes per day of occupational therapy; and 7) 45 minutes per day of speech language pathology.  *Id.*

6.      The IEP also provided that the student receive extended school year services, four hours per day of specialized instruction, and one hour per day each of the following:  behavioral support services, occupational therapy, and speech language pathology from June 29 through July 24, 2009.  *Id.* at 9–10.

7.      Pursuant to the August 2009 IEP, R.E. was placed at Prospect Learning Center, a school in the District of Columbia Public Schools ("DCPS") system.  *Id.* at 135. Plaintiff voluntarily removed R.E. from Prospect and enrolled him in CAPCS.  *Id.*

8.      CAPCS only serves students through the eighth grade, and R.E. matriculated out at the end of the 2009–10 school year.  Pl.'s Statement of Facts at 2.

9.      On May 28, 2010, plaintiff filed a due process complaint against DCPS alleging, among other things, that DCPS had failed to provide an appropriate placement for R.E. for the 2010–11 school year.  AR at 83.

10.     On August 17, 2010, plaintiff enrolled R.E. as a "non-attending" student at his neighborhood public school, Ron Brown.  *Id.* at 10, 80–81.

11.     The 2010–11 school year for R.E. began on August 23, 2010.  *Id.* at 7.  DCPS's 2010–11 school year also began on August 23, 2010.  *Id.*

12.     On September 6, 2010, plaintiff enrolled R.E. at School Finders, a private school. *Id.* at 11; Pl.'s Statement of Facts at 3.

13.     R.E.'s annual IEP review meeting for the 2010–11 school year was not held prior to the start of the 2010–11 school year.  AR at 10.

14.     When plaintiff filed her due process complaint in the instant case on September 13, 2010, DCPS was 23 days late in preparing a new IEP for R.E.  *Id.* at 21.

15.     On October 7, 2010, DCPS provided plaintiff parent's counsel with a "prior

written notice" document identifying the Monroe School ("Monroe"), as

placement for R.E.  *Id.* at 6–7, 144.

16.     Prior to October 7, 2010, DCPS had not identified a school placement, or a

location at which R.E.'s IEP would be implemented.  *Id.* at 7.

## II.     THE HEARING OFFICER'S DETERMINATION

The hearing officer denied plaintiff's requests for both reimbursement and prospective

funding on the grounds that plaintiff had failed to demonstrate a remediable violation of the

IDEA.  *Id.* at 28.  The officer used the three-pronged test outlined in *School Committee of Town*

*of Burlington v. Department of Education of Massachusetts* ("*Burlington*"), 471 U.S. 359 (1985),

*i.e.,* 1) whether there has been a denial of FAPE; 2) whether the private placement by the parents

was appropriate; and 3) where the equities lie, and found that plaintiff's claims failed both the

first and third prongs.  AR at 13.

Considering the first prong—whether the school has denied the student a free and

appropriate education ("FAPE"), or otherwise violated the Individuals with Disabilities

Education Act ("IDEA")—the hearing officer determined that a full-time special education

placement was actually provided for, and thus could not, as plaintiff alleged, serve as grounds for

a violation of IDEA.  *Id.* at 17.  According to the hearing officer, the August 20, 2009 IEP

contained a full-time special education placement, as "placement" means merely "core

components of educational program," which is "separate and distinct from the location at which

services will be delivered."  *Id.*  Thus, the failure to specify a location was not a violation of

IDEA.  *Id.*  Furthermore, the hearing officer identified that the location was specified prior to the

due process hearing, and thus the "key problem" was already "remedied."  *Id.* at 19.

The hearing officer allows that failing to review and update the IEP at least annually did constitute a procedural violation under IDEA § 614(d)(4)(A)(I) (codified at 20 U.S.C. § 1414(d)(4)(A)(I)).[1]  AR at 19.  The officer found, however, that the record did not indicate the 23-day delay either impeded the child's right to FAPE or impaired the parent's right to participate.  Absent such a showing, the hearing officer held the violation allowed no relief.  *Id.* at 22.

The private school placement was deemed appropriate, and the second prong of Burlington—whether the placement was appropriate—satisfied, according to the hearing officer. *Id.*  Even were FAPE to have been denied, rendering both the first and second prongs satisfied, the hearing officer nevertheless concluded that the equities, the third *Burlington* prong, favored DCPS.  *Id.*  The hearing officer stressed that the plaintiff "intended to deceive," "provided only evasive answers," and "intentionally made [R.E.'s enrollment] unclear" in such an "unreasonable" manner that it "lessens the seriousness of the offense."  *Id.*  The officer found both the first and third prong of the *Burlington* test failed, and denied both of plaintiff's requests for relief.  *Id.* at 13.

## DISCUSSION

### III.   <u>STANDARD OF REVIEW</u>

The parties have cross-moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, which provides for entry of summary judgment "if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  Where, as here, neither party seeks to present additional evidence, a motion for summary judgment "operates as a motion for judgment based on the evidence comprising the

---

[1] All references to the D.C. Code, United States Code, or the Code of Federal Regulations are to the electronic versions that appear in Westlaw or Lexis.

record." *Phillips ex rel. T.P. v. District of Columbia*, 736 F. Supp. 2d 240, 246 (D.D.C. 2010);

*Parker v. Friendship Edison Pub. Charter Sch.*, 577 F. Supp. 2d 68, 72 (D.D.C. 2008).

       In reviewing a hearing officer's decision in an IDEA case, the court "(i) shall receive the

records of the administrative proceedings; (ii) shall hear additional evidence at the request of a

party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as

[it] determines is appropriate."  20 U.S.C. § 1415(i)(2)(c); see *Bd. of Educ. v. Rowley*, 458 U.S.

176, 205 (1982); *Theodore v. District of Columbia*, 772 F. Supp. 2d 287, 292 (D.D.C. 2011);

*Stein v. District of Columbia*, 709 F. Supp. 2d 57, 66 (D.D.C. 2010).

       Plaintiff, as the aggrieved party challenging the hearing officer's determination in this

case, has the burden of persuading the court by a preponderance of the evidence that the hearing

officer was wrong.  *Reid ex rel. Reid v. District of Columbia,* 401 F.3d 516, 521 (D.C. Cir.

2005); *Phillips*, 736 F. Supp. 2d at 246; *District of Columbia v. Abramson*, 493 F. Supp. 2d 80,

83–84 (D.D.C. 2007); *District of Columbia v. Ramirez*, 377 F. Supp. 2d 63, 67 (D.D.C. 2005).

       The preponderance of the evidence standard of review does not authorize unfettered *de

novo* review.  *Stein*, 709 F. Supp. 2d at 66; *Wilkins v. Disrict of Columbia*, 571 F. Supp. 2d 163,

171 (D.D.C. 2008); *see also Rowley*, 458 U.S. at 205–06 (discussing that the preponderance of

the evidence standard of review is not an invitation to the courts to substitute their own notions

of sound education policy for those of the school authorities which they review).  However, the

court's authority to hear additional evidence suggests less deference than is conventional in

administrative proceedings.  *Reid*, 401 F.3d at 521; *Theodore*, 772 F. Supp. 2d at 292; *see also

Rowley*, 458 U.S. at 205–06 (discussing that courts are to make independent decisions based on a

preponderance of the evidence); *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 758 (3d Cir. 1995)

(recognizing the expertise of the administrative agency and that courts must consider the findings

carefully and endeavor to respond to the hearing officer's resolution of each material issue; then the court is free to accept or reject the findings in part or in whole); *Town of Burlington v. Dep't. of Educ. of Mass.*, 736 F.2d 773, 792 (1st Cir. 1984) (same), *aff'd*, 471 U.S. 359 (1985). Therefore, a court upsetting the hearing officer's decision must explain its basis for doing so. *Reid,* 401 F.3d at 521; *Theodore*, 772 F. Supp. 2d at 292; *Stein*, 709 F. Supp. 2d at 66.

## IV.   APPLICABLE LAW

The IDEA guarantees children with disabilities the right to a FAPE with services designed to meet their unique needs.  20 U.S.C. §§ 1400(d)(1)(A), 1412(a)(1).  Once a child is identified as disabled, the school district must convene a meeting of a multi-disciplinary team ("MDT") to develop an IEP for the student.  *Id.* § 1414; *see also* 34 C.F.R. § 300.323(c).  At the beginning of each school year, each local education agency shall have in effect for each child with a disability in the agency's jurisdiction an IEP as defined in 20 U.S.C. § 1414(1)(A) and 34 C.F.R. § 300.323(a).  The public agency must ensure that it reviews the child's IEP periodically, but not less than annually, to determine whether the annual goals for the child are being achieved.  It must revise the IEP as appropriate to address annual goals, results of any reevaluation, information about the child, the child's anticipated needs, or other matters.  34 C.F.R. §§ 300.324(b)(1)(i)–(ii), 300.324(b)(2).

## V.   ARGUMENT

### A.   Plaintiff's Argument

Plaintiff argues that DCPS had a duty to provide appropriate placement, including a school for R.E. to attend, for the 2010–11 school year.  Pl.'s Mem. at 11.  According to plaintiff, under IDEA's "child find" provisions, DCPS must identify all children in its jurisdiction in need of special education, regardless of whether the parents have requested anything.  *Id.*

Additionally, plaintiff argues that, even without the affirmative duty to act initially, DCPS was

on notice that R.E. needed a new placement for the 2010–11 school year because 1) it had only

licensed his prior school to provide education through the eighth grade, and 2) plaintiff and

DCPS had only recently completed litigating a case in which R.E.'s need for a public placement

for the 2010–11 school year had been discussed. *Id.* at 12.  According to plaintiff,

reimbursement is proper "appropriate relief" because DCPS's failure to place R.E. by the

beginning of the school year rendered plaintiff's unilateral placement of her son in a private

school warranted under the circumstances. *Id.* at 13.

Plaintiff also challenges DCPS's requirement of official, written notice of plaintiff's

decision to unilaterally place R.E. at School Finders.  Plaintiff argues that the notice requirement

only applies when a student is removed from a school, not when the student did not have a

school to attend in the first place. *Id*; Pl.'s Supplementary Mem. in Supp. of Pl.'s Mot. for

Summ. J. ("Pl.'s Supp. Mem.") at 1, ECF No. 18.

Plaintiff additionally contests the hearing officer's determination that she acted

unreasonably and deceitfully.  Pl.'s Mem. at 14.  Plaintiff claims that her responses to inquiries

from Ron Brown's special education teacher were based merely on her lack of knowledge and

information of the future of R.E.'s placement, given that DCPS had not yet identified a school

for R.E. to attend. *Id.* at 14–15.  Plaintiff argues that her actions were not misleading or

unreasonable as DCPS had required her to register R.E. at the local school (Ron Brown) and,

furthermore, plaintiff had told Ron Brown's special education teacher that R.E.'s actual

placement was to be determined. *Id.* at 15.

Plaintiff also argues that DCPS violated procedural safeguards and thus denied FAPE by

not including her in the decision making process that led to R.E.'s being placed at Monroe. *Id.* at

17.  Plaintiff asserts that because she was "completely excluded from the decision to place R.E. at Monroe, arguably the most important component of her child's education, it could hardly be argued that [her] opportunity to participate was not significantly impeded."  *Id.* at 18.

Finally, plaintiff asserts that the proposed placement at Monroe was inappropriate because Monroe is not a full-time, self-contained special education setting, and, as such, was unable to meet R.E.'s needs as a student with severe and multiple disabilities.  *Id.* at 20.

### B.    Defendant's Argument

Defendant asserts that FAPE was not denied because its procedural violations did not affect R.E.'s ability to receive an educational benefit.  Def.'s Mem. at 7–8.  Defendant further argues that the 23-day delay in creating the new October 7, 2010 IEP was minor and did not harm R.E.  Def.'s Resp. to Pl.'s Supplementary Mem. in Supp. of Pl.'s Mot. for Summ. J. ("Def.'s Supp. Mem.") at 2–3, ECF No. 19.

Defendant contends that plaintiff's relief should be denied or limited because her behavior was unreasonable in the following ways:  1) enrolling R.E. as a "non-attending" student at Ron Brown (local DCPS school); 2) not asking DCPS for placement or further assistance; and 3) not disclosing her intention to seek private placement for R.E. at public expense.  Def.'s Mem. at 9.  Defendant states that the parent places/removes her child at her own risk and that tuition reimbursement may be denied if the parent did not either mention placement at the most recent IEP team meeting or send notice 10 business days prior to removing her child from the public school.  *Id.* at 10.

VI.     **ANALYSIS**

A.     **The Hearing Officer Erred in Denying Reimbursement**

While the hearing officer concluded that plaintiff had established that the private

placement at School Finders was appropriate, he concluded that plaintiff had failed to meet the

other factors identified in *Burlington*:  1) that the school district had denied FAPE to the student

or otherwise violated IDEA, and 2) that equitable factors favored plaintiff.  AR at 13; *see*

*Burlington*, 471 U.S. at 369–70, 374; *accord Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 247

(2009); *Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter,* 510 U.S. 7, 16 (1993).

1.     *The* **Burlington** *Factors*

In *Burlington,* the father of a handicapped child rejected the educational authority's IEP

plan, enrolled the child in a private school at his expense, and subsequently sought

reimbursement from the educational authority.  *Burlington*, 471 U.S. at 362.  The educational

agency persisted in refusing to reimburse the father, arguing that 20 U.S.C. § 1415(e)(3) barred

reimbursement because the father unilaterally placed the child at the private school.  *Id.* at 364.

Two issues were considered by the Supreme Court:  1) whether the potential relief available

under 20 U.S.C.  1415(e)(2) included reimbursement to parents for private school tuition and

related expenses when there has been a denial of FAPE; and 2) whether 20 U.S.C. § 1415(e)(3)

authorized reimbursement for a private school placement upon a denial of FAPE because IDEA

directs the court to grant such relief as appropriate.  *Id.* at 369.  The Court resolved both issues in

favor of a private placement but cautioned that the grant of power under the IDEA to courts to

award "such relief as the court determines is appropriate" implied that "equitable considerations

are relevant in fashioning relief," *id.* at 374, when there has been a private school placement.

Thus, upon a showing of a denial of FAPE, reimbursement for a private placement is appropriate if a balancing of the equities requires that result.

> **2.      *DCPS Denied FAPE by Failing to Timely Update R.E.'s IEP and by Not Including Plaintiff in the Decision Making Process***

The hearing officer found that, while DCPS committed a procedural violation by not timely notifying plaintiff of a proposed school for R.E., R.E. had not been denied FAPE because he did not suffer substantial harm from this violation.  On the contrary, I conclude that both the failure of DCPS to update R.E.'s IEP in a timely manner and its decision to place R.E. at Monroe without input from plaintiff caused substantive harm to R.E. and denied him FAPE in violation of the Act.

> a)      *DCPS's Failure to Timely Update R.E.'s IEP Denied Him FAPE*

A violation of the procedural safeguards in IDEA may compel the conclusion that a child has been denied FAPE if the violation caused the child substantive harm.  *Lesesne v. District Of Columbia*, 447 F.3d 828, 834 (D.C. Cir. 2006) (holding that the hearing officer properly determined that the plaintiff was required to demonstrate that her child suffered educational harm in order to establish that he was denied FAPE by the school district's procedural violation; and rejecting the argument that a procedural violation was *per se* harm).  Therefore, plaintiff in this case must demonstrate that DCPS committed a procedural violation and that the violation caused substantive harm.

A failure to timely re-evaluate the IEP is a procedural violation of IDEA.  *Taylor v. District of Columbia*, 770 F. Supp. 2d 105, 109–10 (D.D.C. 2011).  Generally, when the school district violates the procedural requirements of IDEA by failing to develop an IEP in the manner specified, the purposes of the Act are not served, and the district may have failed to provide FAPE.  *A.I. ex rel. Iapalucci v. District of Columbia*, 402 F. Supp. 2d 152, 163–64 (D.D.C.

2005); *see also Honig v. Doe,* 484 U.S. 305, 311 (1988) (holding that IDEA requires the school district to create and implement an IEP, which is the "primary vehicle" for implementing the Act); *Burlington*, 471 U.S. at 368 (holding that the IEP is of the utmost importance because it is the primary vehicle for implementing the IDEA); *Alston v. District of Columbia*, 439 F. Supp. 2d 86, 90 (D.D.C. 2006) (holding that the IEP is the main tool for carrying out the Act). Accordingly, DCPS admitted that it committed a procedural violation because it failed to review and update R.E.'s IEP annually.  AR at 20.

Once the IEP is developed, the school system must provide an appropriate educational placement that comports with the IEP.  *Alston*, 439 F. Supp. 2d at 90.  The IEP must contain a location where the services will be provided.  20 U.S.C.  1414(d)(1)(A)(i)(VII) (IEP shall contain: " The projected date for the beginning of the services and modifications described in paragraph (a)(4) of this section, and the anticipated frequency, *location*, and duration of those services and modifications." (emphasis added)); 34 C.F.R. § 300.320(7) (same); *Alston*, 439 F. Supp. 2d at 90 (same).  The importance of identifying a location, or particular school, where the IEP is to take place was thoroughly discussed in *A.K. ex rel. J.K. v. Alexandria City School Board*, 484 F.3d 672, 681 (4th Cir. 2007).

In *A.K.*, the plaintiff parents asserted that their child had been denied FAPE because the educational agency failed to identify a particular school in their child's IEP.  *Id.* at 679. Although the educational agency had submitted two schools for the parents' choice, the court found that the IEP team had never considered whether those particular schools would be able to satisfy the child's specialized needs.  *Id.* at 681.  The court reasoned that, since the school at which special education services are expected to be provided can determine the appropriateness of an IEP, the school selection can be a critical element for the IEP to address.  *Id.*  The IEP

should have identified a school because the parents expressed doubt concerning the existence of a particular school that could satisfactorily provide the level of services that their child's IEP described. *Id.* at 682. Therefore, it was incumbent that the educational agency clearly identify an appropriate placement from the range of possibilities. *Id.* at 681. Not doing so was a denial of FAPE. *Id.*

In the present case, R.E. matriculated out of CAPCS at the end of the 2009–10 school year and therefore did not have a school to return to. AR at 6. While the August 2009 IEP might have been reasonably calculated to enable some educational benefit, it failed to identify a location where R.E. was to receive services for the 2010–11 school year. *Id.* at 12. Accordingly, for the 2010–11 school year, a proper, annual IEP update for R.E. and identification of a particular school for R.E. to attend was crucial. Similar to the circumstances in *A.K.*, the IEP here should have identified a school to provide FAPE before the school year began. Additionally, this failure cannot be dismissed as harmless since the school year actually began without R.E. being placed at a specific school. This child, despite his severe disabilities, had no school to attend when the school year began, and all the other children had been assigned a school. Therefore, DCPS's failure to do so denied R.E. FAPE.

> b)   *DCPS's Failure to Include Plaintiff in the Decision to Place R.E. at Monroe Denied R.E. FAPE*

A hearing officer may also find that a child did not receive FAPE if the procedural inadequacies significantly impeded the parents' opportunity to participate in the decision-making process. 20 U.S.C. § 1415(f)(3)(E)(ii)(II); *Lesesne*, 447 F.3d at 830; *Taylor*, 770 F. Supp. 2d at 109–10; *Stein*, 709 F. Supp. 2d at 67; *see also J.N. v. District of Columbia*, 677 F. Supp. 2d 314, 320–21 (D.D.C. 2010) (holding that procedural inadequacies that seriously infringe upon the

parents' opportunity to participate in the IEP formulation process clearly result in the denial of FAPE)*; Iapalucci*, 403 F. Supp. 2d at 164 (same).

IDEA guarantees that the parents of each child with a disability participate in any group that makes decisions on the educational placement of their child. It emphasizes the participation of the parents in developing jointly with the school district the child's educational program and assessing its effectiveness. 20 U.S.C. § 1415(a); *see also* 20 U.S.C. § 1400(d)(1)(B) (rights of parents protected); *id.* § 1414(c)(1)(B) (input from parents specified); *id.* § 1414(a)(1)(D) (parental consent specified); *id.* § 1415(b) (opportunity for parents to examine the record specified); 34 C.F.R. § 300.322 (regulation dedicated to ensuring parental participation).

A public school may conduct a meeting without a parent in attendance only if it is unable to convince the parents that they should attend. 34 C.F.R. § 300.322(a); *J.N.*, 677 F. Supp. 2d at 322. The agency must make detailed records of the attempts to contact the parents. *Id.*

While the hearing officer determined that plaintiff had participated meaningfully in the IEP team process, AR at 11, the record shows that DCPS unilaterally updated R.E.'s IEP for the 2010–11 school year when it proposed Monroe as the location for R.E.'s IEP to be implemented. *Id.* at 6, 10. In fact, plaintiff was not included in any IEP team meetings after the August 2009 IEP team meeting. *Id.* at 10. Therefore, excluding the plaintiff in the 2010–11 IEP update process violated an important procedural safeguard and seriously impaired the right of the parent to participate in the process. This violation was thus another denial of FAPE.

### 3. *Equitable Considerations Support Reimbursing Plaintiff for R.E.'s Educational Costs*

Judges of this court have recognized that, when DCPS fails to produce a new IEP by the first day of school, the parent does not have to wait for DCPS but may select a placement and be reimbursed. *See, e.g., Stein*, 709 F. Supp. 2d at 72*; Abramson*, 493 F. Supp. at 86–87*; see also*

*Block v. District of Columbia*, 748 F. Supp. 891, 897 (D.D.C. 1990) (reimbursement for private school placement ordered when DCPS failed to properly evaluate the student and formulate an appropriate IEP). Plaintiff was not required to wait until October 7, 2010 for DCPS to act and could seek reimbursement for enrolling her child in a private school before the school year began.

A court may reduce or deny tuition reimbursement to parents when they fail to inform the IEP team, prior to removing the child from the school, that they were rejecting the placement proposed by the public agency and intending to enroll their child in a private school at public expense. 20 U.S.C. § 1412(a)(10)(C)(iii)(I)(aa); *Schoenbach v. District of Columbia*, 309 F. Supp. 2d 71, 84 (D.D.C. 2004). The hearing officer found that plaintiff had not provided any written notice to DCPS either stating her concerns with R.E.'s IEP or that she intended to enroll the student in a private school. AR at 11. But, prior to October 7, 2010, DCPS had not identified a particular school placement, or a location at which R.E.'s IEP would be implemented. *Id.* at 7. Accordingly, there was no proposed placement that plaintiff could reject nor could she express her concerns about a non-existent placement.

Furthermore, on May 28, 2010, plaintiff filed an IDEA due process complaint against DCPS alleging, among other things, that DCPS had failed to provide an appropriate placement for R.E. for the 2010–11 school year. *Id.* at 83. A pre-hearing conference was held on July 7, 2010. Such a complaint constitutes reasonable notice. *See, e.g, Edwards-White v. District of Columbia*, 785 F. Supp. 1022, 1024 (D.D.C. 1992) (holding that plaintiffs' complaint leading to a due process hearing constituted reasonable notice that they were dissatisfied with DCPS's placement, and DCPS was thus obligated to review, and possibly revise, the student's IEP). Therefore, even if plaintiff was required to formally contest a non-existent placement, plaintiff

provided DCPS with the requisite notice via the May 2010 due process complaint, and certainly by the July 7, 2010 pre-hearing conference, of her concern that her child had not been placed for the 2010–11 school year.  Consequently, reimbursement should not have been denied because of any lack of notice.

A court may also reduce or deny tuition reimbursement upon a judicial finding that the actions taken by the parents were unreasonable.  20 U.S.C. § 1412(a)(10)(C)(iii)(III); 34 C.F.R. § 300.148(d)(3); *Iapalucci*, 402 F. Supp. 2d at 162; *see, e.g.*, *Schoenbach*, 309 F. Supp. 2d at 85–86 (denying equitable relief of tuition reimbursement because of parents' lack of notice before removing their child to private school and their unreasonable acts of not objecting to the IEP's public school placement during, or in the adequate time after, the team meeting).  *Compare M.M. v. Sch. Dist.,* 303 F.3d 523, 533–35 (4th Cir. 2002) (finding that the school district was not liable for its failure to timely complete the IEP because the parents ceased to cooperate in the IEP's completion), *with Warren G. ex rel. Tom G. v. Cumberland Cnty. Sch. Dist.*, 190 F.3d 80, 86 (3d Cir. 1999) (reversing the decision denying reimbursement where the school district failed to come forward with an appropriate IEP and there was no finding that the parents' slight delay obstructed its ability to do so).[2]

Plaintiff started R.E. at School Finders the day after Labor Day, September 6, 2010, because R.E. did not have a placement at the start of the 2010–11 school year.  Tr.[3] at 84, ECF No. 9-8.  Nevertheless, the hearing officer concluded that her doing so was unreasonable even

---

[2] See also *Maynard,* 701 F. Supp. 2d at 124–25 (a hearing officer's findings of parental unreasonableness upheld when the parent, whose child did not have an updated IEP, enrolled her child during the summer break with a DCPS school undergoing construction, gave DCPS one month during the summer to complete the IEP, but then left the DCPS school system for a private school after trying to enroll her child at another DCPS school and only waiting two hours for assistance from that school).

[3] "Tr." refers to the transcript for the due process hearing held on October 21, 2010, which is paginated consecutively.

though the child had no designated school to attend.  But, there is no evidence supporting that conclusion.

First, the hearing officer found R.E.'s enrollment at Ron Brown as "non-attending" misleading and that plaintiff's responses to Ron Brown's special education teacher about which school R.E. would be attending for the 2010–11 school year "evasive" and intentionally unclear, thus constituting a refusal to answer legitimate inquiries.  AR at 24.  But, the record first demonstrates that plaintiff enrolled R.E. as "non-attending" at the direction of DCPS.  Tr. at 81.

Second, plaintiff enrolled R.E. at Ron Brown on August 17, 2010.  AR at 10.  Plaintiff responded to Ron Brown's special education teacher's questions regarding where R.E. would be attending school with "I don't know" and "to be determined" because she had not yet received a proposed placement from DCPS for the 2010-11 school year.  Tr. at 81–82.  Plaintiff told the truth; after all, she had not been invited to an IEP team meeting since August 2009 and could not possibly know in August or September what DCPS would do in October, after the school year started.  *Id.* at 78, 82 ECF Nos. 9-7, 9-8.[4]

The Court therefore finds that plaintiff's actions and conduct were not unreasonable.  The record shows that plaintiff paid $2,850 for tuition at School Finders.  *Id.* at 85.  This case should therefore be remanded solely to permit the hearing officer to determine whether that amount was reasonable.  *See Carter*, 510 U.S. at 8.

---

[4] The record also shows that plaintiff would have taken advantage of, and attended, an IEP team meeting for the 2010–11 school year, should one have been convened.  Tr. at 83–84.  Furthermore, plaintiff proactively sought action from DCPS in filing her due process complaints.  AR at 21, 83.  She certainly did not "stone-wall" or mislead DCPS.

**B.** **While the Hearing Officer Erred in His Finding That There Was No Actionable Violation of IDEA, Prospective Funding for Private Placement at School Finders Is Not Appropriate**

A hearing officer or court may award relief, including prospective private placements as well as any other appropriate relief, only when there has been an actionable violation of IDEA. 20 U.S.C. § 1415(f)(3)(E)(ii)(II); *Branham v. District of Columbia*, 427 F.3d 7, 11–12 (D.C. Cir. 2005). Plaintiff seeks prospective relief of R.E.'s private placement at School Finders. The issue of prospective placement generally arises, however, only after the IEP has been properly completed and the parent wishes to remove the student from the IEP's recommended location. *See N.T. v. District of Columbia*, 839 F. Supp. 2d 29, 32 (D.D.C. 2012).

In the present case, while there has been an actionable violation of IDEA, the consideration of prospective placement is frustrated without the revised IEP and a subsequent, collaboratively determined placement for R.E. for the 2010–11 school year. Given the timing of this appeal and the hearing officer's initial order to convene an IEP team meeting 30 days after the November 10, 2010 decision, a revised 2010–11 IEP has likely been created. AR at 21. There is no indication in the record of the preparation of an IEP for the 2012–13 school year. Prospective placement at School Finders should not be addressed for the 2012–13 school year by this Court but by the MDT/ IEP team. Given the approaching onset of the school year, however, this should be done as soon as possible.

**C.** **Defendant's Additional Arguments and Plaintiff's Counterarguments**

Defendant also now makes several arguments not made initially before the hearing officer. First, defendant claims that, even if FAPE was denied, reimbursement is not appropriate unless the parent's unilateral placement in private school was necessary to meet the child's needs and provide FAPE. Def.'s Mem. at 12. Defendant asserts that plaintiff should have followed the test articulated in *Branham*, 427 F.3d at 7, specifically analyzing: 1) the cost of School Finders;

19

and 2) the extent of School Finders being the least restrictive environment for R.E.   Def.'s Mem. at 12–13.   According to defendant, absent testimony justifying the cost of School Finders, 20 U.S.C. § 1412(a)(5)(A) does not permit a parent's unilateral private placement to substitute for the IEP team's placement decision regarding what would be the least restrictive environment for the student.   *Id.* at 13–15.

Relying on D.C. CODE § 38-2561.03(a), defendant further asserts that School Finders is not on DCPS's list of certified schools and thus cannot be reimbursed, for the D.C. Code only authorizes DCPS to fund private placements of its certified schools.   Def.'s Reply to Pl.'s Opp'n to Def.'s Cross-Motion for Summ. J. ("Def.'s Reply") at 6, ECF No. 17.

The hearing officer never considered these arguments, and there is no record whatsoever to review concerning these issues.   In the absence of a demand by either party to hear additional evidence on this issue, IDEA, as explained above, requires that review be premised on the administrative record.   *Phillips*, 736 F. Supp. 2d at 246.   These arguments, therefore, should not be considered now.

### CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment, ECF No. 11, be granted-in-part and denied-in-part and Defendant's Opposition to Plaintiff's Motion for Summary Judgment and Defendant's Cross Motion for Summary Judgment, ECF No. 13, be denied.   I also recommend that the matter be remanded to the hearing officer to determine whether the reimbursement sought is reasonable.

**Failure to file timely objections to the findings and recommendations set forth in this report may waive your right of appeal from an order of the District Court adopting such findings and recommendations. See Thomas v. Arn, 474 U.S. 140 (1985).**

**DATE**:  August 24, 2012

/s/ *John M. Facciola*
JOHN M. FACCIOLA
United States Magistrate Judge