## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILMA ELEY, | |
| Plaintiff, | Civil Action No. 11-309 (BAH) |
| v. | Chief Judge Beryl A. Howell |
| DISTRICT OF COLUMBIA, | |
| Defendant. | |

## MEMORANDUM OPINION

This case returns to the Court for reconsideration of the reasonable attorneys' fees and litigation costs the plaintiff, Wilma Eley, is entitled to recover after prevailing on her claim that the District of Columbia denied her child a free and appropriate public education ("FAPE"), in violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq. After vacating the original fee award approved by this Court, and clarifying the plaintiff's burden in demonstrating that the reimbursement rates she proposes are reasonable, the D.C. Circuit remanded the present action to allow the Court to consider whether the plaintiff has met this burden. As a result, again pending before the Court is the plaintiff's request for reimbursement of the fees and costs she incurred in litigating both her initial complaint and her present fee request. Pl.'s Mot. Fees & Costs ("Pl.'s Mot."), ECF No. 26. For the reasons set forth below, the plaintiff's motion is granted in part and denied in part.

## I.     BACKGROUND

The factual and procedural history underlying the present dispute is fully set out in this Court's prior Memorandum Opinion addressing the plaintiff's fee request, as well as the D.C. Circuit's reversal of that decision, *see Eley v. District of Columbia* ("*Eley I*"), 999 F. Supp. 2d

137 (D.D.C. 2013), *vacated and remanded*, 793 F.3d 97 (D.C. Cir. 2015), and will be summarized here only briefly.

After the District failed to identify a public school placement capable of providing her child with the special education services he required during the 2010–2011 school year, the plaintiff enrolled her child in a private school and filed an IDEA administrative due process complaint seeking reimbursement of the cost of tuition at that school. *Id.* at 143. In August 2012, this Court found that the District violated the IDEA by denying the plaintiff's child a FAPE, and ordered the District to reimburse the plaintiff for the tuition costs she incurred in securing an alternative private placement. *Id.* at 143–44.

Having prevailed on her administrative due process complaint, the plaintiff sought reimbursement of attorneys' fees and costs she incurred in pursuing her successful claim. Pl.'s Mot. Specifically, the plaintiff sought reimbursement for her attorneys' time at rates provided by a version of the familiar *Laffey* fee matrix that is updated using the Legal Services Index ("LSI") component of the nationwide Consumer Price Index, a matrix commonly referred to as the "*Salazar*/LSI Matrix." Mem. Supp. Pl.'s Mot. Fees & Costs at 8 ("Pl.'s Mem."), ECF No. 26.[1] In total, the plaintiff initially sought reimbursement of $62,225.00 in fees and costs incurred as of January 18, 2013, which total was comprised of: (1) $60,937.50 in attorneys' fees, including

---

[1]     Established in *Laffey v. Nw. Airlines, Inc.*, 572 F. Supp. 354, 371 (D.D.C.1983), *aff'd in part, rev'd in part on other grounds*, 746 F. 2d 4 (D.C. Cir. 1984), the *Laffey* Matrix recommends a presumptive maximum hourly rate for attorneys engaged in "complex federal litigation," *id.* at 372. Since its initial use in the *Laffey* case, the *Laffey* Matrix has spawned two versions: (1) a version maintained by the U.S. Attorney's Office for the District of Columbia, which is linked to inflation, as measured by the Consumer Price Index for all items in the Washington, DC area ("USAO Matrix"); and (2) a second version, first approved in *Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000), and relied upon by the plaintiff here, which is adjusted for inflation using the more rapidly rising LSI. *See Jones v. District of Columbia*, No. 15-CV-155 (BAH), 2015 WL 9907797, at *1 n.1 (D.D.C. Oct. 29, 2015). As of 2015, the USAO *Laffey* Matrix is adjusted annually using the nationwide Producer Price Index-Office of Lawyers to calculate the change in the cost of legal services in the District. *See* USAO Attorney's Fees Matrix – 2015–2016 ("2015–2016 USAO *Laffey* Matrix") at 1–2 nn.2–3, https://www.justice.gov/usao-dc/file/796471/download.

91.75 hours billed in connection with her underlying administrative action and 5.75 hours billed in connection with the preparation of her initial fee petition, at an hourly rate of $625.00; (2) $937.50 for three hours of her attorneys' travel time, for which the plaintiff sought reimbursement at an hourly rate of $312.50; and (3) $350 in litigation costs. In support of her requested reimbursement rate, the plaintiff presented the following evidence to demonstrate that her requested reimbursement rate was reasonable: (1) a declaration from her attorney describing his experience litigating IDEA cases and his practice of charging paying clients at rates comparable to those set out in the *Salazar*/LSI Matrix; and (2) a declaration from the economist who developed the *Salazar*/LSI Matrix and identified four cases in which this Court and another federal court used that matrix to calculate reasonable fee awards. *Eley I*, 999 F. Supp. 2d at 150, 156.

In response, the District argued that the plaintiff was entitled to an award of no more than $749.25, reflecting both a reduction in the total number of hours billed by the plaintiff's attorney and a proposed hourly reimbursement rate of $90, which corresponds to the rate awarded to attorneys appointed by the D.C. Superior Court to represent "indigent client[]s in Family Court matters" under D.C. law. *See* Def.'s Opp'n Pl.'s Mot. Fees & Costs ("Def.'s Opp'n") at 13, 15–16, ECF No. 27. With the District contesting both the number of hours billed by the plaintiff's attorney, as well as the rate at which the plaintiff would be reimbursed for that time, the dispute was referred to a Magistrate Judge for initial resolution of the plaintiff's motion. *See* Order Referring Case to Magistrate Judge, ECF No. 32.

On August 29, 2013, the Magistrate Judge issued a Report and Recommendation ("R&R") granting in part and denying in part the plaintiff's motion. *See* R&R, ECF No. 34. Specifically, the Magistrate Judge recommended that the plaintiff be fully reimbursed for the

hours billed by her attorney at a rate equivalent to seventy-five percent of the hourly rate provided by the USAO *Laffey* Matrix. *Id.* at 10. After both parties timely objected, Pl.'s Obj. R&R, ECF No. 35; Def.'s Obj. R&R, ECF No. 36, this Court sustained the plaintiff's objections and granted the plaintiff's motion in full. *Eley I*, 999 F. Supp. 2d at 166. Concluding that the plaintiff adduced sufficient evidence to justify her requested fee award, the Court held that both the number of hours billed by the plaintiff's attorney and the plaintiff's request for reimbursement based on the *Salazar*/LSI Matrix were reasonable and ordered the defendant to pay all of the attorneys' fees and litigation costs sought by the plaintiff in her initial fee petition. *Id.*

The District timely appealed this final award on December 19, 2013. Notice of Appeal, ECF No. 44. Before the D.C. Circuit, the District abandoned all but one of its challenges to the plaintiff's motion, leaving as "its sole objection on appeal" the contention that the plaintiff failed to justify her request for reimbursement using the *Salazar*/LSI Matrix. *Eley*, 793 F.3d at 99. Thus, the Circuit set about to determine whether the plaintiff sustained her burden of justifying her requested reimbursement rate. *Id.* The Circuit began by broadly reiterating the two-step burden-shifting analysis first laid out in *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995). Under this framework, "the 'fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates,' and the opposing party remains 'free to rebut a fee claim.'" *Eley*, 793 F.3d at 100 (*Covington,* 57 F.3d 1107–08).

Focusing on the first of these two steps, the Circuit began by explaining that fee matrices serve as a "'useful starting point' in calculating the prevailing market rate" in a particular jurisdiction. *Id.* (quoting *Covington*, 57 F.3d at 1109). The Circuit emphasized, however, that a

4

fee applicant must "produce satisfactory evidence—*in addition* to her attorney's own affidavits—that [her] requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* (alteration omitted) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). Beyond a fee matrix, such evidence may include, *inter alia*, "surveys to update [the matrix]; affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases; and evidence of recent fees awarded by the courts or through settlement to attorneys with comparable qualifications handling similar cases." *Id.* at 101 (quoting *Covington*, 57 F.3d at 1109).

Under this standard, the D.C. Circuit held that the plaintiff did not meet her burden, emphasizing that she failed to present "evidence that her 'requested rates are in line with those prevailing in the community for *similar services*,' *i.e.,* IDEA litigation." *Id.* at 104 (quoting *Covington*, 57 F.3d at 1109). Specifically, the Circuit explained that the "prevailing market evidence proffered by both sides (save for the competing *Laffey* Matrices and [the plaintiff's] lawyer's billing information) consist[ed] solely of awards made by other district courts." *Id.* at 104 n.5. Reviewing these submissions, the Circuit observed that none of the prior fee awards cited by the plaintiff arose from an IDEA proceeding. *Id.* at 104. By contrast, the Circuit explained that the District identified more than forty IDEA cases in this jurisdiction in which prevailing plaintiffs were reimbursed at hourly rates below those supplied by the *Salazar*/LSI Matrix. *Id.* Thus, the Circuit concluded that, on the record then before it, the plaintiff "ha[d] not met her burden of 'justifying the reasonableness of the rates,'" *id.* (quoting *Covington*, 57 F.3d at 1107), and this Court erred in "relieving [the plaintiff] of [that] burden," *id.* at 105.

Having concluded that the plaintiff failed in her initial fee application to demonstrate that her requested reimbursement rate was reasonable, the Circuit vacated this Court's original fee award and remanded this action for further proceedings. *Id.* In so doing, however, the *Eley* Court expressly declined to decide whether, as a matter of law, successful IDEA claimants may receive reimbursement at rates provided under the *Salazar*/LSI Matrix, the less-generous USAO *Laffey* Matrix or at some other rate altogether. *Id.* Nevertheless, in a brief concurrence, one Judge on the *Eley* panel expressed his view that the USAO *Laffey* Matrix "is appropriate for IDEA cases." *Id.* (Kavanaugh, J., concurring). With the Court thus directed, on remand, to reconsider the appropriate reimbursement rate in this case, the parties were given an opportunity to supplement their prior filings to assist in identifying a reasonable reimbursement rate. The parties having each done so, the plaintiff's fee application is again ripe for review.

## II.   LEGAL STANDARD

The IDEA provides that "the court, in its discretion may award reasonable attorneys' fees . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i). Such fees must be "be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished," with no "bonus or multiplier . . . used in calculating" a final IDEA fee award. *Id.* § 1415(i)(3)(C).

This statutory language makes plain that a prevailing party in an IDEA action may seek the award of attorneys' fees that are "reasonable." *Id.* § 1415(i)(3)(B)(i). The D.C. Circuit has developed a "three-part" analysis for assessing whether a requested fee award is reasonable under federal statutes authorizing fee-shifting. *Eley*, 793 F.3d at 100. "First, the court must determine the number of hours reasonably expended in litigation. Second, it must set the reasonable hourly rate. Finally, it must determine whether use of a multiplier is warranted." *Id.*

6

(internal citations and quotations omitted).[2]  With regard to the proposed hourly rate, the Court

considers three sub-elements: "(1) 'the attorney['s] billing practices,' (2) 'the attorney['s] skills,

experience, and reputation' and (3) 'the prevailing market rates in the relevant community.'"  *Id.*

(alterations in original) (quoting *Covington*, 57 F.3d at 1107).

    "The 'fee applicant bears the burden of establishing entitlement to an award,

documenting the appropriate hours, and justifying the reasonableness of the rates.'"  *Eley*, 793

F.3d at 100 (quoting *Covington*, 57 F.3d at 1107).  Once an applicant meets this initial burden, a

presumption applies that the number of hours billed and the hourly rates are reasonable.

*Covington*, 57 F.3d at 1109 (citing *Blum*, 465 U.S. at 897); *see also Jackson v. District of*

*Columbia*, 696 F. Supp. 2d 97, 101 (D.D.C. 2010) (citing *Blackman v. District of Columbia*, 677

F. Supp. 2d 169, 172 (D.D.C. 2010)).  At that point, the burden shifts to the opposing party to

"provide specific contrary evidence tending to show that a lower rate would be appropriate."

*Covington*, 57 F.3d at 1109–10 (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675

F.2d 1319, 1326 (D.C. Cir. 1982)).

    While the IDEA authorizes the court to award reasonable attorneys' fees "in its

discretion," 20 U.S.C. § 1415(i)(3)(B)(i),  the D.C. Circuit has observed, "notwithstanding the

apparently permissive language of the statute, the Supreme Court has interpreted similar

language in other fee-shifting contexts to mean that the prevailing plaintiff 'should ordinarily

recover an attorney's fee unless special circumstances would render such an award unjust.'"

*Price v. District of Columbia*, 792 F.3d 112, 114–15 (D.C. Cir. 2015) (citing authorities).  A

district court's award of attorneys' fees is reviewed for an abuse of discretion, *Eley*, 793 F.3d at

103 (citing *King v. Palmer*, 950 F.2d 771, 785 (D.C. Cir. 1991) (en banc)), and the D.C. Circuit

---

[2]     Since the IDEA prohibits application of any bonus or multiplier, *see* 20 U.S.C. § 1415(i)(3)(C),  only the
first and second elements of this analysis are considered in the discussion that follows.

will not upset such an award "absent clear misapplication of legal principles, arbitrary fact finding, or unprincipled disregard for the record evidence," *id.* at 103–04 (quoting *Kattan ex rel. Thomas v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993)).

## III.   DISCUSSION

In response to the D.C. Circuit's clarification of her evidentiary burden in seeking reimbursement under the IDEA fee-shifting provision, the plaintiff now reiterates her request for reimbursement based on the *Salazar*/LSI Matrix and offers additional evidence in support of that request. *See* Pl.'s Suppl. Mem. Regarding Fees & Costs ("Pl.'s Suppl."), ECF No. 50.   In particular, relying on six declarations from six different attorneys, who have litigated both IDEA and other civil rights actions and attest to the comparative complexity of IDEA cases, *see infra* notes 5–6, the plaintiff contends that IDEA litigation is "at least as complex as . . . areas of law in which *Laffey* has been applied."   Pl.'s Suppl. at 2–4 (citing authorities).   Likewise, in an effort to demonstrate the relative complexity of IDEA matters, the plaintiff points to billing records submitted by large-firm attorneys in two separate IDEA actions to argue that, because these attorneys were unfamiliar with IDEA matters, they billed substantially more hours than are at issue here to litigate comparatively simple IDEA cases.   *Id.* at 5–7.

In addition to renewing her request for reimbursement based on the *Salazar*/LSI Matrix, the plaintiff now seeks reimbursement for the additional fees and costs she has incurred in connection with the appellate and remand proceedings in this case.   *Id.* at 9.   Arguing that the more recent efforts of her attorneys were "necessary to any recovery," Pl.'s Reply Opp'n Suppl. Mem. Re: Fees & Costs ("Pl.'s Suppl. Reply") at 13, ECF No. 56, the plaintiff seeks reimbursement for 170.5 additional hours, plus five additional hours of travel time.   Pl.'s Suppl. at 9; *id.*, Ex. 10 ("Revised Time Sheet"), ECF No. 50-10.   Finally, noting that the hourly rates

provided by the *Salazar*/LSI Matrix are adjusted annually to reflect changes in the cost of legal services, the plaintiff asks the Court to use the current version of her preferred matrix in calculating a final fee award to reflect the delay in payment of these fees throughout the pendency of the current fee litigation. *Id.* at 8–9. As a consequence of these requested adjustments, the plaintiff's final requested fee award totals $180,507.36, comprised of 268 hours, at an hourly rate of $661, plus eight travel hours, at an hourly rate of $330.50, and $715.36 in costs.

The District responds that, even taking into account the new evidence she has presented, the plaintiff has failed to demonstrate that the rates provided by the *Salazar*/LSI Matrix are "in line with the prevailing rate in the District of Columbia" for IDEA practitioners. Def.'s Opp'n Pl.'s Suppl. Mem. Regarding Fees & Costs ("Def.'s Suppl. Opp'n") at 1–8, ECF No. 54. In contrast to its initial suggestion that the plaintiff be reimbursed at an hourly rate of no more than $90, however, the District now urges that the plaintiff's fee award should be based on the USAO *Laffey* Matrix. *Id.* at 7–8. Further, arguing that there has been no significant delay in payment in this case, the District objects to the use of current rates and instead contends that any final fee awards should be based on the rates in place at the time work was performed. *Id.* at 8. Finally, the District disputes any reimbursement for hours billed in connection with the appellate proceedings following the Court's original fee award on the ground that the District, and not the plaintiff, prevailed in its appeal of that initial award. *Id.* at 8–9.

Following the D.C. Circuit's remand, the United States Department of Justice ("DOJ") filed a statement of interest, pursuant to 28 U.S.C. § 517, expressing the government's view that any fee award in this case should be based on hourly rates not exceeding those set out in the USAO *Laffey* Matrix. *See* Statement of Interest of the U.S. ("DOJ's Statement"), ECF No. 49.

Concluding that the resolution of the parties' present disputes "may affect the interests of the United States government in future federal attorneys' fees litigation," the Court denied the plaintiff's motion to strike the DOJ filing and, accordingly, will consider the views of the United States in resolving these disputes. *See* Min. Order, dated June 8, 2016 (citing authorities).

Taking these supplemental filings into consideration, each of the parties' remaining disputes are addressed in turn.

### A.    The Plaintiff Has Not Shown that Reimbursement Using the *Salazar*/LSI Matrix is Reasonable in this Case

In vacating this Court's initial fee award, the D.C. Circuit emphasized that the plaintiff bears the burden of producing sufficient competent evidence to demonstrate that "her requested rates are in line with those prevailing in the community for . . . IDEA litigation." *Eley*, 793 F.3d at 104 (internal quotation marks omitted) (quoting *Covington*, 57 F.3d at 1109). While recognizing that all attorneys engaged in the same type of litigation "should receive fees based on the prevailing market rate charged by for-profit lawyers," the Circuit rejected the notion that IDEA litigation presumptively qualifies as "complex federal litigation" meriting reimbursement based on a *Laffey*-derived fee matrix. *Id.* at 105. Instead, the Circuit explained that, in order to justify her request for reimbursement based on the *Salazar*/LSI Matrix, the plaintiff may point to evidence, beyond her attorney's own declaration, that "IDEA litigation is as complex as the type of litigation that supports the . . . hourly rates" she requests. *Id.*[3] In so doing, both the *Eley* majority and concurrence suggested that plaintiffs seeking reimbursement at *Laffey* rates must

---

[3]    The D.C. Circuit's decision in *Eley* permits IDEA litigants to show that "irrespective of whether IDEA proceedings qualify as 'complex federal litigation,' attorneys who litigate IDEA actions in this jurisdiction charge rates that are in line with those charged by their peers engaged in *bona fide* complex federal litigation." *Flood v. District of Columbia*, No. CV 15-497 (BAH), 2016 WL 1180159, at *9 (D.D.C. Mar. 25, 2016) (citing *Laffey*, 572 F. Supp. at 374). This alternative basis for the relief the plaintiff seeks is considered only briefly, *infra* pp. 15–16, however, since the plaintiff's request for reimbursement based on the *Salazar*/LSI Matrix rests principally on her contention that IDEA litigation is no less complex than other types of litigation giving rise to such rates, rather than on evidence that attorneys charge and collect such fees in IDEA litigation.

show that such rates *generally* apply in IDEA cases, without regard to the particular complexities presented by any individual case. *See id.*; *see Reed v. District of Columbia*, 134 F. Supp. 3d 122, 129 (D.D.C. 2015) ("*Eley* seems . . . to instruct that the relevant inquiry is whether IDEA proceedings *as a class of litigation* qualify as 'complex federal litigation' to be compensated at one of the *Laffey* rates . . . .").

The categorical approach suggested in *Eley*, which treats IDEA cases as a class of litigation to which common hourly fee rates will generally apply, was again evident in the D.C. Circuit's more recent decision in *Salazar ex rel. Salazar v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015). In *Salazar*, the D.C. Circuit considered the appropriate reimbursement rate in calculating a fee award in a long-running class action, under 42 U.S.C. § 1983, challenging various aspects of the District's Medicaid program. *Id.* at 61. There, as here, the plaintiffs sought reimbursement for their attorneys' time based on the *Salazar*/LSI Matrix, which matrix was originally approved in connection with an earlier fee award arising out of the case, while the District argued for reimbursement at rates supplied by the USAO *Laffey* Matrix. *Id.* at 63–64. While the *Salazar* Court found that the more generous *Salazar*/LSI Matrix "is probably a *conservative* estimate of the actual cost of legal services in [the District]," *id.* at 65, the Court distinguished its earlier holding in *Eley* as resting on its view of "evidence submitted by the District tending to show that, in the particular context of IDEA claims, there is a submarket in which attorneys' hourly fees are generally lower than the rates in either of the *Laffey* Matrices," *id.* at 64. Following *Salazar*, then, the D.C. Circuit has made clear that an IDEA plaintiff seeking reimbursement based on a *Laffey*-derived fee matrix must demonstrate that the rates provided by such a matrix align with those generally commanded by IDEA practitioners in the District.

Following *Eley*, differing views have been expressed on this Court whether IDEA cases may be considered "complex federal litigation" to which rates supplied by either *Laffey*-derived matrix presumptively apply.  On one hand, before and after *Eley*, other Judges on this Court have "rejected the suggestion that IDEA administrative litigation is categorically less complex than other forms of litigation," and allowed for recovery of attorneys' fees based on *Laffey*-derived matrices in IDEA cases.  *See Merrick v. District of Columbia*, 134 F. Supp. 3d 328, 339 (D.D.C. 2015) (citing authorities).  This interpretation is consistent with the *Eley* concurrence, in which Judge Kavanaugh expressed his view that prevailing IDEA claimants should be reimbursed at full USAO *Laffey* rates.  *Eley*, 793 F.3d at 105 (Kavanaugh, J., concurring).  At the same time, however, other Judges on this Court have held that IDEA actions "are infrequently comparable to complex federal litigation, and therefore, full *Laffey* rates should not be awarded in such cases."  *Snead v. District of Columbia*, 139 F. Supp. 3d 375, 379 (D.D.C. 2015) (collecting cases).  In the latter cases, rates equivalent to seventy-five percent of an attorney's applicable rate under the USAO *Laffey* Matrix for "non-complex" IDEA cases have been applied.  *See, e.g.*, *Wilhite v. District of Columbia*, No. CV 15-01267 (RC), 2016 WL 4007073, at \*5–8, \*9 n.10 (D.D.C. July 25, 2016).[4]

These conflicting perspectives on whether and, if so, how IDEA litigation fits within the broad scope of "complex federal litigation," to which a version of the *Laffey* Matrix is the presumptively reasonable lodestar rate, *Eley*, 793 F.3d at 100–01, present obvious challenges to

---

[4]     This purported distinction between "complex" and "non-complex" IDEA actions, with the level of complexity determining the reasonable reimbursement rate for prevailing plaintiffs, is difficult to square with the categorical approach emphasized in *Eley*, as well as the Supreme Court's admonition that the "the novelty and complexity of a case generally may not be used as a ground for [a deviation from an otherwise reasonable award] because these factors 'presumably [are] fully reflected in the number of billable hours recorded by counsel.'" *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010) (quoting *Blum*, 465 U.S. at 898); *accord Reed*, 134 F. Supp. 3d at 129 (finding "improper" the "case-by-case approach" employed by the Magistrate Judge in recommending differing reimbursement rates for separate IDEA actions based on the perceived complexity of the individual proceedings).

both courts and litigants and results in extending fee litigation long after the merits issues in these cases are resolved. Upon consideration of the evolving, binding Circuit precedent, the Court is not persuaded that the additional evidence submitted by the plaintiff in connection with her present fee petition meets her initial burden of demonstrating that her request for reimbursement at her attorneys' full *Salazar*/LSI rate is warranted. As previously noted, *supra* Part I, in support of her initial fee petition, the plaintiff submitted: (1) a declaration from her attorney describing his experience litigating IDEA cases and practice of matching his hourly rate for fee-paying clients to the *Salazar*/LSI Matrix, *see* Pl.'s Mot., Ex. 2, ECF No. 26-3; and (2) a declaration from the economist who developed the *Salazar*/LSI Matrix explaining the methodology underlying that matrix and identifying four cases in which Judges in this District and another District used that matrix to calculate reasonable fee awards, Pl.'s Mot., Ex. 4a, ECF No. 26-5.

With her motion again before the Court, the plaintiff has supplemented these original submissions with six additional declarations, including: (1) a second declaration from her attorney, who now describes his experience in both IDEA cases and other civil rights actions and avers that IDEA cases generally present more complexity than other matters he has litigated, Pl.'s Suppl., Ex. 1 (Verified Statement of Douglas Tyrka ("2nd Tyrka Decl.")), ECF No. 50-1;[5] (2) declarations from five other attorneys who regularly take on IDEA cases and similarly aver, often deploying nearly identical language, that such cases often present numerous challenges that together make preparation and litigation of such matters more complicated, Pl.'s Suppl., Exs. 2–

---

[5] The plaintiff's counsel, who is the sole owner of a small law firm in the District, estimates that he has litigated over 1000 IDEA cases, including over fifty cases in federal court, since he began specializing in special education law in 2003. 2nd Tyrka Decl. ¶ 2. Prior to that time, the plaintiff's counsel assisted in numerous federal employment discrimination matters, as well as civil rights cases under 42 U.S.C. § 1983. *Id.* ¶ 3.

6, ECF Nos. 50-2–50-6.[6]  Similarly, citing various difficulties in both substantive IDEA actions and follow-on fee litigation, these attorneys generally explain that they have been, or would be, unable to sustain a practice based substantially on fee-shifting in successful IDEA actions. *See*, *e.g.*, 2nd Tyrka Decl. ¶¶ 44–45; Pl.'s Suppl., Ex. 2 (Verified Statement of Diana M. Savit ("Savit Decl.")) ¶ 14, ECF No. 50-2; *id.*, Ex. 3 (Verified Statement of Charles Moran ("Moran Decl.")) ¶ 13, ECF No. 50-3; *id.*, Ex. 4 (Verified Statement of Alana Hecht ("Hecht Decl.")) ¶ 14, ECF No. 50-4.

At the outset, the Court is sensitive to the demonstrable difficulties involved in representing IDEA plaintiffs.  Indeed, as has been elsewhere recognized, attorneys in the District have reported numerous challenges associated with obtaining reasonable compensation for their efforts on behalf of prevailing IDEA plaintiffs.  *Flood v. District of Columbia*, No. CV 15-497 (BAH), 2016 WL 1180159, at *13 (D.D.C. Mar. 25, 2016).  Like the declaration presented by the plaintiff here, evidence of the distinct challenges faced by IDEA practitioners in the District "may be probative of an otherwise hidden burden on the vindication of the valuable rights provided under the IDEA." *Id.*  This hidden burden is particularly troubling in light of the Supreme Court's admonition that "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).  In this vein, the plaintiff's evidence suggesting that competent IDEA practitioners have difficulty maintaining their practice under current conditions, *see* Pl.'s Suppl., Ex. 6 (Verified Statement of Maria G. Mendoza ("Mendoza Decl.")) ¶ 10 (explaining that the attorney has "almost completely discontinued [her IDEA] work because it

---

[6]    Like the plaintiff's own lawyer, these attorneys each practice at small firms in the Washington, DC area, where they focus either largely or exclusively on special education matters. *See generally* Pl.'s Suppl., Exs. 2–6. Collectively, in their decades of experience, these attorneys have litigated thousands of IDEA administrative and federal actions and various federal civil rights cases.

was financially impossible"), ECF No. 50-6; Pl.'s Suppl., Ex. 5 (Verified Statement of Domiento C.R. Hill ("Hill Decl.")) ¶ 13 (indicating that the attorney's "work for non-paying IDEA clients has been insufficient to maintain [her] firm in a reasonable manner"), ECF No. 50-5, provides some support for the plaintiff's contention that reimbursement rates adopted by some Judges on this Court may be unreasonably low.

In the end, however, missing from the plaintiff's submissions is evidence that the prevailing market rate for the services these attorneys provide corresponds to the rates set out in the *Salazar*/LSI Matrix. Indeed, of the six declarations submitted by the plaintiff, only two of the attorneys attest to charging rates comparable to those set out in the *Salazar*/LSI Matrix. Pl.'s Suppl. at 8; 2nd Tyrka Decl. ¶¶ 12–13; Moran Decl. ¶¶ 9–11. Notably, however, only one of these attorneys appears to have *collected* fees at these billed rates. Moran Decl. ¶¶ 11–12 (stating that *Salazar*/LSI rates "are regularly paid by clients who retain [the attorney's] firm to litigate cases on a non-contingency basis"). By contrast, the plaintiff's own attorney explains that he charged rates "perfectly matching" those provided by the *Salazar*/LSI Matrix but only during a period when federal law capped IDEA fee awards in the District at $4,000. 2nd Tyrka Decl. ¶¶ 12–13, 15 n.1. Likewise, two declarants report requesting or receiving fees at rates below those supplied by the USAO *Laffey* Matrix, Hecht Decl. ¶ 13 (explaining that the attorney receives "at least $270.00 per hour for my IDEA work," a figure well below the lowest hourly rate provided by current *Salazar*/LSI Matrix); Hill Decl. ¶ 14 (stating that, "in an effort to speed fee recovery I have restricted myself to requesting fees calculated with . . . the '75% USAO'"), while the remaining declarants provide no indication of the rates they charge or collect for IDEA matters, *see generally* Mendoza Decl.; Savit Decl. Beyond these declarations, the only other evidence submitted by the plaintiff is a 2013 National Law Journal Billing Survey indicating that

the average hourly billing rate for partners at major Washington-area law firms is broadly in line with the rates set out in the *Salazar*/LSI Matrix. Pl.'s Suppl., Ex. 7 (2013 NLJ Billing Survey) at 1, ECF No. 50-7. As the D.C. Circuit has explained, however, such evidence of general prevailing market rates in the District is of limited value absent a showing that these rates also prevail in the particular context of IDEA matters. *Eley*, 793 F.3d at 105.

Despite this paucity of evidence demonstrating that IDEA practitioners generally collect fees at rates comparable to those set out in the *Salazar*/LSI Matrix, the plaintiff contends that her proffered evidence shows that "IDEA litigation is at least as complex as other litigation in which *Laffey* rates have been applied." Pl.'s Suppl. at 2. By extension, the plaintiff suggests, rates deemed applicable in other types of "complex federal litigation" should be equally reasonable in the context of IDEA proceedings. *Id.* In this sense, the plaintiff attempts to respond to the *Eley* Court's silence on the answer to the question "whether IDEA litigation is in fact sufficiently 'complex' to use either version of the *Laffey* Matrix (and if so, which version of the *Laffey* Matrix is more appropriate)." *Eley*, 793 F.3d at 105. In the plaintiff's view, the evidence she now proffers *does* demonstrate that IDEA litigation is sufficiently complex to warrant reimbursement based on a *Laffey*-derived fee matrix. Further, bolstered by this Court's prior analysis of the comparative strengths of the competing *Laffey* matrices, which analysis has since been cited favorably by the D.C. Circuit, *see Salazar*, 809 F.3d at 65, the plaintiff argues that the *Salazar*/LSI Matrix, and not the USAO *Laffey* Matrix, supplies reasonable reimbursement rates in IDEA cases. Pl.'s Suppl. at 7–8.

The plaintiff has a point. To a degree, the evidence she has presented suggests that IDEA litigation, both at the administrative level and before a federal court, is often no less complex than other types of civil rights actions that have been readily described as "complex federal

litigation" in this Circuit.  As previously noted, this conclusion is consistent with the view expressed by at least one member of the *Eley* Court.  *See Eley*, 793 F.3d at 105 (Kavanaugh, J., concurring).  Moreover, in opposing the plaintiff's present petition, the District does not dispute the substance of the plaintiff's declarations describing various complexities presented by many IDEA cases.  *See generally* Def.'s Suppl. Opp'n at 1–8.  In fact, the District's present contention that the plaintiff is entitled to reimbursement based on the USAO *Laffey* Matrix, *id.* at 7–8, more readily suggests that IDEA cases *do* constitute "complex federal litigation" under *Laffey* and its progeny.  Assuming IDEA litigation is sufficiently complex to warrant reimbursement at *Laffey* rates, the D.C. Circuit's recent observation that the *Salazar*/LSI Matrix "is probably a *conservative* estimate of the actual cost of legal services in [the District]," *Salazar*, 809 F.3d at 65, would seem to suggest that the plaintiff's present request for reimbursement based on that matrix may be reasonable.

Nonetheless, considering all of the evidence presented by the parties, the Court is unpersuaded that the plaintiff's request for reimbursement based on the *Salazar*/LSI Matrix for her attorneys' work in this case is reasonable.  As construed in *Salazar*, *Eley* makes clear that a prevailing IDEA plaintiff cannot rely solely on a *Laffey*-derived fee matrix where an opposing party presents evidence "tending to show that, in the particular context of IDEA claims, there is a submarket in which attorneys' hourly fees are generally lower than the rates in either of the *Laffey* Matrices." *Salazar*, 809 F.3d at 64 (citing *Eley*, 793 F.3d at 105); *cf. Covington*, 57 F.3d at 1111 (upholding rejection of proposed submarket including only plaintiffs' attorneys "in civil rights, employment, and discrimination actions" absent evidence "that submarket rates are lower than the prevailing rates in the broader legal market").  Here, while the parties apparently agree that IDEA litigation is sufficiently complex to warrant reimbursement based on *a Laffey*-derived

matrix, the evidence before the Court suggests that the appropriate reimbursement rate in this case is provided by the USAO *Laffey* Matrix, and not the more generous *Salazar*/LSI Matrix.

As previously noted, the plaintiff provides scant evidence indicating that IDEA practitioners in the District generally charge and collect rates comparable to those set out in the *Salazar*/LSI Matrix. At the same time, however, evidence offered by the District and the United States more readily suggests that prevailing IDEA plaintiffs rarely obtain reimbursement at such rates. Most notably, the United States has provided a chart reflecting 132 fee awards in this jurisdiction between April 2010 and July 2015. *See* Decl. Dr. Laura A. Malowane, Ex. 7, ECF No. 49-1. Of these awards, eighty-one arose out of IDEA proceedings, with this total comprised, in roughly equal parts, of: (1) cases in which Judges awarded either full USAO *Laffey* or full *Salazar*/LSI rates; (2) cases in which the prevailing plaintiff requested, and received, reimbursement at a reduced rate; (3) a collection of cases, which were litigated simultaneously and resolved by a single Magistrate Judge in virtually identical opinions, in which the plaintiffs' requests for *Salazar*/LSI rates were denied;[7] and (4) additional cases in which prevailing plaintiffs sought reimbursement at *Laffey* rates but were instead granted reimbursement at reduced rates. *Id.*

Taken together, these cases suggest that, in the specific context of IDEA litigation, prevailing plaintiffs are most frequently reimbursed at or just below the rates set out in the USAO *Laffey* Matrix. While the plaintiff contends that these prior fee awards offer little insight into the actual prevailing market rate for IDEA services, Pl.'s Suppl. Reply at 6–7, the D.C. Circuit in *Eley* relied on exactly such evidence in considering whether IDEA services comprise a

---

[7]     Seventeen such cases are also included in the District's "non-exhaustive list of IDEA cases" in which fees have been awarded at a rate equivalent to seventy-five percent of a prevailing attorney's USAO *Laffey* Matrix rate. Def.'s Suppl. Opp'n at 3 n.1; *see Flood*, 2016 WL 1180159, at *15 n.11. As previously noted, the District now agrees that the plaintiff is entitled to reimbursement at her attorney's full USAO *Laffey* Matrix rate.

distinct submarket of legal services in the District, *Eley*, 793 F.3d at 104; *but see Salazar*, 809 F.3d at 65 n.1 (explaining that evidence of prior fee awards is "not compelling," because "district court cases [are] not binding precedent for [the Circuit] or the [district] court"). With this in mind, absent additional evidence demonstrating that her requested rate is in line with rates actually charged and collected by IDEA practitioners in this jurisdiction, the plaintiff's reliance on the *Salazar*/LSI Matrix in this case is not supported with the evidentiary record required by D.C. Circuit on appeal in this case. *Accord Reed*, 134 F. Supp. 3d at 128–31 (considering the same evidence presented by the plaintiff here and concluding that "IDEA proceedings are qualitatively dissimilar to most other complex federal litigation," with prevailing IDEA plaintiffs therefore entitled to reimbursement at reduced rates); *see also Salmeron v. District of Columbia*, No. CV 13-1615 (RBW), 2016 WL 3365377, at *6–7 (D.D.C. June 16, 2016) (same, rejecting reimbursement based on the *Salazar*/LSI Matrix). Instead, taking into account the plaintiff's evidence regarding the complexities presented in many IDEA cases, as well as the District's concession that IDEA plaintiffs are frequently reimbursed based on the original *Laffey* matrix, the plaintiff is entitled to reimbursement based on the USAO *Laffey* Matrix.[8]

---

[8]        In addition to disputing *which Laffey* matrix should be used as the appropriate reimbursement rate, the parties disagree as to whether the plaintiff should be reimbursed at the *current* rate provided by their preferred matrix or, instead, at the rates in place when the plaintiff's attorney performed the services for which the plaintiff seeks reimbursement. As explained above, *supra* note 1, each *Laffey* matrix is revised annually to reflect changes in the cost of legal services in the District. As the plaintiff correctly notes, however, the Court previously granted the plaintiff's request for reimbursement based on the then-current *Salazar*/LSI matrix, which applied the same rate to all of the work performed by the attorney from 2010 to 2013. *See* Pl.'s Mot. at 8-9 (seeking reimbursement at current rates); *Eley I*, 999 F. Supp. 2d at 166 (awarding the plaintiff the "full amount" requested in her fee motion). In appealing this decision, the District's "sole objection" to the original fee award in this case was "to the prevailing market rate [this] court used in its calculation," *Eley*, 793 F.3d at 99, and the District offers no explanation for its apparent waiver of this issue of application of the current matrix on appeal, *see generally* Def.'s Suppl. Opp'n. Accordingly, the District's attempt to revive this issue on remand is denied. *See Laffey*, 740 F.2d at 1089 ("Adherence to the rule that a party waives a contention that could have been but was not raised on a prior appeal is, of course, necessary to the orderly conduct of litigation." (internal citation and quotation marks omitted)). As a result, the current 2015 USAO *Laffey* matrix will be used.

Finally, while the law of the case is that the plaintiff is entitled to reimbursement under the *current* matrix, the parties do not address the issue of whether the rate applies uniformly to all the hours billed or is applied based on the plaintiff's attorney's level of experience at the time he performed work on the plaintiff's behalf. The Court will use the current USAO *Laffey* matrix as applied to the attorney's level of experience at the time he performed work on the plaintiff's behalf. *See Young v. Sarles*, No. CV 14-1203 (BAH), 2016 WL 3747528, at *9–10 (D.D.C. July 11, 2016). The plaintiff's attorney received his juris doctor in 1998 and has practiced continuously since that time. Pl.'s Mot., Ex. 2 ¶¶ 13–14, ECF No. 26-3. As such, he progressed from the "11-15" category to the "16-20" category in the current USAO *Laffey* Matrix upon the sixteenth anniversary of his date of graduation. *See* 2015–2016 USAO *Laffey* Matrix n.6.[9] Thus, the plaintiff will be reimbursed at an hourly rate of $455 for all hours billed before June 1, 2014, which is the date provided in the matrix for calculating an attorneys' level of experience, and at an hourly rate of $504 for all hours billed after that date. *See id.*

Having identified the appropriate reimbursement rates for the hours billed by the plaintiff's attorney in this case, the Court turns next to the plaintiff's separate request for reimbursement for the hours her attorney billed in connection with the appellate and remand proceedings in this case.

---

[9]     After the completion of supplemental briefing in this matter, the USAO made a number of modifications to its version of the *Laffey* matrix. Before 2015, the USAO *Laffey* Matrix provided a single reimbursement rate for attorneys with between eleven and nineteen years of experience. *See, e.g.*, *Laffey* Matrix– 2014–2015, https://www.justice.gov/sites/default/files/usao-dc/legacy/2014/07/14/Laffey%20Matrix_2014-2015.pdf; *see* Pl.'s Suppl. at 8 n.7 (indicating that, based on the matrices then in place, the "[p]laintiff's counsel remains in the '11-19' class"). By contrast, the most recent USAO *Laffey* Matrix subdivides this category of attorneys, with a different rate for attorneys with between eleven and fifteen years of experience and those with between sixteen and twenty years of experience. *See* 2015–2016 USAO *Laffey* Matrix.

### B.   Plaintiff Is Entitled to a Majority of Fees Incurred in Connection with Appellate and Remand Proceedings

In connection with her most recent filings, the plaintiff submitted a revised time sheet reflecting her attorneys' work up to and including the preparation of her supplemental submission in connection with the present remand proceedings. In total, the plaintiff requests reimbursement for an additional 175.5 hours, beginning on February 12, 2013, which includes: (1) 37.75 hours not previously accounted for in connection with the original fee litigation before this Court; (2) 110.5 hours, including five hours of travel time, in connection with proceedings before the D.C. Circuit; and (3) 27.25 hours in connection with the present proceedings on remand.

In support, the plaintiff explains that, as yet, "neither party has ultimately prevailed on the remaining issues" in dispute between the parties. Pl.'s Suppl. Reply at 13. Thus, while the original fee award approved in this case has since been vacated by the D.C. Circuit, the present remand proceedings are essential to determining whether the plaintiff is entitled, as she contends, to reimbursement based on the *Salazar*/LSI Matrix. *Id.* Moreover, the plaintiff contends that, even if the Court ultimately declines to award her the full measure of fees to which she believes she is entitled, "the Court should nonetheless award fees and costs for [this more recent work] because it was necessary to any recovery." *Id.* Specifically, the plaintiff suggests that, had her attorney declined to defend her original fee award on appeal, "the Court of Appeals would simply have reversed this Court's [O]rder," leaving her with no recovery of attorneys' fees and litigation costs. *Id.* at 13-14. The District responds that, because a portion of the additional hours for which the plaintiff now seeks reimbursement were "devoted to her unsuccessful attempt to defend her fee award on appeal," the plaintiff is entitled to no additional fees or costs incurred after this Court's original Order. Def.'s Suppl. Opp'n at 8–9.

21

Unfortunately, the parties offer little precedential support for their respective positions on this issue. As the D.C. Circuit has explained, however, "[a]s a rule, in fee disputes, if an award of attorney's fees is appropriate in the underlying litigation, such an award is also appropriate for a *successful* appeal (or defense of an appeal) of an issue relating to the fee award itself." *Bd. of Trustees of Hotel & Rest. Employees Local 25 v. JPR, Inc.*, 136 F.3d 794, 808 (D.C. Cir. 1998) (emphasis added). Such fees are available "because, for fee-shifting provisions to serve their purposes . . . their beneficiaries must be assured that they will be able to collect the fee awards that they are due." *Id.* (citing *Am. Fed'n of Gov't Emps. v. FLRA*, 994 F.2d 20, 22 (D.C. Cir. 1993)). At the same time, where, as here, a case is remanded to the district court for further consideration, a party "cannot be said to be successful in [the] appeal" until the district court issues a favorable ruling on remand. *Id.* In this sense, the plaintiff is correct that, as of the submission of the parties' supplemental filings in connection with the present proceedings, the parties could not say definitively whether or not the plaintiff prevailed in defending her original fee award.

Even before today's ruling, however, the plaintiff has substantially prevailed in a number of important respects in the present fee litigation. First, as previously noted, *supra* Part I, while the parties fiercely disputed numerous aspects of the plaintiff's original fee request, the District appealed only the reimbursement rate applied in calculating the plaintiff's initial fee award. Most notably, the District declined to renew its argument that the plaintiff prevailed only partially in her underlying administrative action or that the plaintiff was entitled to *no* reimbursement for her attorneys' efforts in connection with the present fee litigation. *See Eley I*, 999 F. Supp. 2d at 146–48, 162–64. Moreover, given that the District initially persisted, even before the D.C. Circuit, in suggesting that the plaintiff was entitled to reimbursement at no more

than $90.00 per hour, *see* Final Brief for Appellant at 21 n.2, *Eley v. District of Columbia*, 793 F.3d 97 (D.C. Cir. 2015) (No. 13-7196), 2014 WL 5408515, its present concession that the plaintiff should be reimbursed based on the USAO *Laffey* Matrix, Def.'s Suppl. Opp'n at 7–8, represents a significant shift favoring the plaintiff in the District's position on the sole remaining issue in this case. Nonetheless, in light of the conclusion that the plaintiff has not met her burden of demonstrating that she is entitled to reimbursement at the full *Salazar*/LSI Matrix rate she seeks, the plaintiff cannot be said to have prevailed entirely in the fee litigation arising out of her successful IDEA claim.

Yet, the District overreaches in suggesting that the plaintiff is entitled to *no* compensation for her attorneys' work in defending her original fee award. As the Supreme Court has explained, just as district courts are required to "consider the relationship between the amount of the fee awarded and the results obtained, fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation." *Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 163 n.10 (1990). Guided by this principle, the Court then must first determine the degree to which the plaintiff prevailed in the present fee litigation to determine what portion of the fees-on-fees she reasonably incurred are recoverable. To do so, the Court first determines what portion of the fees and costs the plaintiff requested in connection with her underlying administrative action is recoverable and, second, applies this recovery rate to the total fees and costs reasonably incurred in connection with the follow-on fee litigation.

As set out in the chart below, on remand, the plaintiff seeks $61,988.25 in fees and costs incurred in her underlying administrative action. This total includes 91.75 hours, for which the plaintiff sought reimbursement at an hourly rate of $661.00, plus three hours of travel time to be reimbursed at an hourly rate of $330.50, and $350 in litigation costs. As a result of the Court's

ruling today, the total amount of fees and costs awarded to the plaintiff in connection with this administrative action, all of which were incurred before June 1, 2014, is $42,852.25.  Thus, the plaintiff will ultimately recover approximately 69 percent of the fees she sought in connection with her prevailing merits claim.

**Merits Litigation Fees & Cost Calculation**

|  | Hours | Requested Rate | Requested Total | Approved Rate | **Approved Total** |
|---|---|---|---|---|---|
| Hours | 91.75 | $661.00 | $60,646.75 | $455.00 | $41,746.25 |
| Travel | 3 | $330.50 | $991.50 | $252.00 | $756.00 |
| Costs | | | $350 | | $350 |
| **Total** | **94.75** | | **$61,988.25** | | **$42,852.25** |

In connection with the subsequent fee litigation, including the appeal and present remand proceedings, the plaintiff's attorney billed 176.25 hours, 72 of which were incurred prior to June 1, 2014, and will be reimbursed at a hourly rate of $455.00 and 104.25 of which were incurred after that date, and will be reimbursed at an hourly rate of $504.00, plus five travel hours to be compensated at an hourly rate of $252.00, and an additional $365.36 in costs, resulting in a preliminary fees-on-fees award of $86,927.36, as reflected in the following chart.

**Fee Litigation Fees & Cost Calculation**

|  | Hours | Requested Rate | Requested Total | Approved Rate | *Preliminary Total* |
|---|---|---|---|---|---|
| Pre-June 2014 Hours | 72 | $661.00 | $47,592.00 | $455.00 | $32,760.00 |
| Post-June 2014 Hours | 104.25 | $661.00 | $68,909.25 | $504.00 | $52,542.00 |
| Post-June 2014 Travel | 5 | $330.50 | $1,652.50 | $252.00 | $1,260.00 |
| Costs | | | $365.36 | | $365.36 |
| **Total** | **181.25** | | **$118,519.11** | | **$86,927.36** |

Given the plaintiff's partial success during this latter stage of the case, however, this preliminary fees-on-fees award of $86,927.36 will be awarded at 69 percent of the full amount

requested or, in other words, reduced by 31 percent, reflecting the rough percentage of success the plaintiff achieved on remand and resulting in a final fees-on-fees award of $59,979.88. Combined with the $42,852.25 reasonably incurred in her underlying administrative action, the plaintiff is entitled to a total fee award of $102,832.13.

## IV.   CONCLUSION

For the foregoing reasons, the plaintiff is entitled to reimbursement of the attorneys' fees and costs she incurred both in litigating her successful IDEA administrative due process claim and in connection with the present fee dispute.  As a result of her attorneys' efforts, the plaintiff prevailed entirely on her underlying IDEA claim and successfully obtained reimbursement for the costs she incurred in placing her child in an appropriate educational setting.  While the plaintiff was ultimately unable to demonstrate that IDEA practitioners generally collect fees at rates comparable to those set out in the *Salazar*/LSI Matrix, she substantially prevailed in seeking reimbursement at a rate far above that initially proposed by the District.  As a result, she is now entitled to reimbursement of the bulk of the attorneys' fees and costs she incurred in bringing this action.

Date: August 22, 2016

_____
BERYL A. HOWELL
Chief Judge